# IN THE UNITED STATES DISTRICT COURT FOR THE
# NORTHERN DISTRICT OF ALABAMA
# MIDDLE DIVISION

| | |
|---|---|
| NANCY D. GOWENS HILTON, | ) |
| | ) |
|    Plaintiff, | ) |
| | ) |
| v. | )CV-09-BE-2418-M |
| | ) |
| MICHAEL ASTRUE, | ) |
| COMMISSIONER OF SOCIAL | ) |
| SECURITY, | ) |
| | ) |
|    Defendant. | ) |

## MEMORANDUM OPINION

### I.  INTRODUCTION

      The claimant, Nancy Gowens Hilton, filed an application for Supplemental Security Income (SSI) on December 18, 2006.  The claim was denied on March 6, 2007.  The claimant then filed a timely request for a hearing before an Administrative Law Judge (ALJ) on March 13, 2007.  The ALJ held a hearing on March 6, 2009, in Gadsden, Alabama.  The claimant appeared and testified at this hearing.  In a decision dated June 12, 2009, the ALJ found that the claimant was not disabled under section 1614(a)(3)(A) of the Social Security Act and, therefore, was not eligible for SSI.  The claimant then filed a request with the Appeals Council of the Social Security Administration on July 17, 2009, whereupon the Appeals Council denied the claimant's request for review.  The claimant has exhausted her administrative remedies, and this court has jurisdiction under 42 U.S.C §§ 405(g) and 1631(c)(3).  For the reasons stated below, the decision of the Commissioner will be **AFFIRMED**.

## II.  STANDARD OF REVIEW

The court's role in reviewing claims brought under the Social Security Act is a narrow one.  The scope of its review is limited to determining (1) whether substantial evidence in the record as a whole supports the findings of the Commissioner, and (2) whether the correct legal standards were applied. *See Richardson v. Perales*, 402 U.S. 389, 390, 401 (1971); *Wilson v. Barnhart*, 284 F.3d 1219, 1221 (11th Cir. 2002).  Substantial evidence is more than a scintilla, but less than a preponderance.  It is such relevant evidence as a reasonable person would accept as adequate to support a conclusion.  *See Richardson*, 401 U.S. at 401.

The court approaches the factual findings of the Commissioner with deference, but applies close scrutiny to the legal conclusions.  *See Martin v. Sullivan*, 894 F.2d 1520, 1529 (11th Cir. 1990).  The court may not decide facts, weigh evidence, or substitute its judgment for that of the Commissioner.  *See Bloodsworth v. Heckler*, 703 F.2d 1233, 1239 (11th Cir. 1983).  The substantial evidence standard permits administrative decision makers to act with considerable latitude, and "the possibility of drawing two inconsistent conclusions from the evidence does not prevent an administrative agency's finding from being supported by substantial evidence." *Consolo v. Fed. Mar. Comm'n*, 383 U.S. 607, 620 (1966)).

Indeed, even if this court would disagree with the Commissioner's findings, the court must affirm the findings if they are supported by substantial evidence.  *See Miles v. Chater*, 84 F.3d 1397, 1400 (11th Cir. 1996).  No decision is automatic, however, for "despite this deferential standard [for review of claims] it is imperative that the court scrutinize the record in its entirety to determine the reasonableness of the decision reached." *Bridges v. Bowen*, 815 F.2d 622, 624 (11th Cir. 1987).  Moreover, failure to apply the correct legal standards is grounds for reversal.

*See Bowen v. Heckler*, 748 F.2d 629, 635 (11th Cir. 1984).

### III. ISSUES

The claimant moves to have the decision of the ALJ reversed due to lack of substantial evidence regarding four main issues. The issues presented to this court by the claimant include:

(1) Whether the ALJ adequately considered the mental health evidence of record;

(2) Whether the ALJ's credibility finding, specifically the allotment of great credibility to Drs. Randolph (consulting) and Goff (reviewing) and no credibility to the opinion of treating physician Dr. Born, was supported by substantial evidence;

(3) Whether the ALJ properly found that the claimant does not meet Listing 12.04; and

(4) Whether the ALJ's hypothetical question to Dr. Kinard, the vocational expert, accurately portrayed the claimant's mental condition.

### IV. LEGAL STANDARD

Under 42 U.S.C. § 423(d)(1)(A), a person is entitled to disability benefits when the person cannot

> engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months.

To make this determination, the Commissioner employs a five-step, sequential evaluation process:

> (1) Is the person presently unemployed?
> (2) Is the person's impairment severe?
> (3) Does the person's impairment meet or equal one of the specific impairments set forth in 20 C.F.R. pt. 404, subpt. P, app. 1?
> (4) Is the person unable to perform his or her former occupation?
> (5) Is the person unable to perform any other work within the economy?

> An affirmative answer to any of the above questions leads either to the next question, or, on steps three and five, to a finding of disability. A negative answer to any question, other than step three, leads to a determination of "not disabled."

*McDaniel v. Bowen*, 800 F.2d 1026, 1030 (11th Cir. 1986); *see also* 20 C.F.R. §§ 404.1520, 416.920.

The ALJ's findings must state specifically the "weight accorded to each item of evidence and why he reached such a decision." *Hudson v. Heckler*, 755 F.2d 781, 786 (11th Cir. 1985) (quoting *Cowart v. Schweiker*, 662 F. 2d 731, 735 (11th Cir. 1981)). Failure to do so will make it "impossible for the reviewing court to determine whether the ... decision was ...rational and supported by substantial evidence." *Id.* The ALJ is required to give "considerable weight to the treating physicians' opinion absent good cause." *Sharfarz v. Bowen*, 825 F.2d 278, 279-280 (11th Cir. 1987). In the Eleventh Circuit, "[g]ood cause exists 'when the: (1) treating physician's opinion was not bolstered by the evidence; (2) evidence supported a contrary finding; or (3) treating physician's opinion was conclusory or inconsistent with the doctor's own medical records.'" *Phillips v. Barnhart*, 357 F.3d 1232, 1240 (11th Cir. 2004).

## V.  FACTUAL HISTORY

The claimant was forty-six years old at the time of the administrative hearing and has a high school equivalent education, as well as some vocational training. (R. 55). Her past work experience includes employment as a waitress and a production manager at a nursery. (R. 56). At the March 6 hearing before the ALJ, the claimant testified that she cannot work because of her back pain, anger issues, depression, panic attacks, and dislike of being around a large number people. (R. 68-69).

*A. Mental Limitations*[1]

On February 1, 2007, the claimant appeared in the emergency room of Riverview Regional Medical Center, complaining of chest pain. (R. 311). The psychosocial, neurological, cardiovascular, and respiratory exams performed on the plaintiff came back normal. (R. 311). At this time, the claimant estimated her pain at an "8" on a "1-10" scale. She was diagnosed and treated for atypical chest pain and acute anxiety and was discharged in a stable and improved condition. (R. 312-14).

On February 26, 2007, the claimant appeared for an examination with Dr. Henry Born, M.D., the claimant's general practitioner, claiming she could not work due to constant back pain. (R. 297). The claimant also reported problems sleeping, being nervous, and having crying spells. Aside from (1) a slow gait, (2) problems walking on her toes and heels, squatting, and arising, and (3) decreased flexion, extension, lateral flexion, and lateral rotation of the dorsolumbar spine, Dr. Born found the functioning of the claimant's eyes, ears, neck, thorax, heart, abdomen, neurological orientation/intelligence, upper extremities, and lower extremities to be normal. (R. 297-98). Additionally, Dr. Born noted that the claimant had good range of motion at the cervical spine, shoulders, elbows, wrists, hands, fingers, hips, knees, ankles, and feet, with no swelling or tenderness noted at these joints. (R. 298). Dr. Born stated that the claimant's nervous problem had worsened due to her back pain and diagnosed her with chronic anxiety. (R. 298).

The claimant was admitted to Gadsden Regional Medical Center on June 7, 2007, for complaints of a recent increase in anxiety and frequent panic attacks. (R. 175). At this visit, the

---

[1]On appeal, the claimant does not dispute the ALJ's conclusion regarding her physical limitations. Therefore, the primary focus of the court will be the claimant's mental ailments/ limitations.

Dr. Farrukh Jamil saw the claimant. The claimant reported that her depression had worsened and she had mood swings and suicidal ideation. She also reported to Dr. Jamil that her panic attacks and anxiety had worsened and that she suffered from decreased energy, fatigue, and a lack of sleep. At this time, the claimant reported feeling very irritable and going into rages at her home. (R. 175). The claimant was alert and oriented times three during her duration in the hospital as well as upon discharge. She also showed no evidence of psychotic symptomatology, delusional thoughts, disorganization, loose association or flight of ideas, or compulsive symptoms. (R. 175). The examining doctor at Gadsden Regional Medical Center, Dr. Jamil diagnosed the claimant with panic disorder with agoraphobia dysthymia and gave her a global assessment of functioning (GAF) score of 30. (R. 176).

Dr. Born's office notes for the period of June 7, 2007, through September 10, 2007, show that the claimant was treated with Zyprexa, Klonopin, Neurontin and Lorcet Plus for recurrent back pain and panic attacks and that the claimant could benefit from seeing a psychiatrist if she could afford one. (R. 149-157). On January 10, 2008, while Dr. Born treated the claimant for bipolar disorder, he commented that "she is doing pretty well actually." R. 151. Additionally, in Dr. Born's office notes on March 13, 2008, he reported that the claimant was stable, feeling "pretty good," and had her nerves under control. (R. 413).

In the initial administrative hearing on September 10, 2008, after the claimant testified that she had not seen a specialist concerning her mental problems, the ALJ stopped the hearing and ordered that the claimant set up a consultative appointment with Dr. Randolph, a psychologist. (R. 58). Upon examination, Dr. Randolph concluded that the claimant did not have any cognitive impairment that would warrant an award of psychiatric disability. (R. 438).

6

Additionally, Dr. Randolph did not find enough evidence to diagnose the claimant with bipolar disorder. Dr. Randolph opined that the claimant may have "more of an addiction than she is admitting due to her number of visits to area emergency rooms obtaining opioids and narcotics." (R. 438).

At the second hearing on March 6, 2009, Dr. John Goff, a licensed psychologist, testified as to his diagnoses of the claimant after he had reviewed the entire record. Dr. Goff testified that the conclusion of the claimant's primary care physician, Dr. Born, that the claimant might have bipolar disorder was not developed in the record. Additionally, Dr. Goff stated that the conclusions of the consultative psychiatrist, Dr. Randolph, that the claimant has an opioid dependence, a substantive mood disorder, and a border-line personality disorder also were not substantiated in the record. (R. 71). However, Dr. Goff testified that, despite the previously mentioned diagnoses, Dr. Randolph did not diagnose the claimant with an anxiety disorder or a significant depressive disorder. (R. 72). Additionally, in reviewing medical source opinion from Dr. Randolph, Dr. Goff saw indications of only mild to moderate impairments in all areas. From his review of the record, Dr. Goff testified that the claimant did not meet a listing for any sort of psychiatric disturbance. (R. 72).

Dr. Dan Kinard, a vocational expert, also testified at the March 6 hearing regarding the types of employment opportunities available to the claimant, subject to her limitations. (R. 73-76). Dr. Kinard testified that the claimant acquired no transferable skills from her previous jobs. (R. 73). Additionally, Dr. Kinard testified that, given the claimant's present limitations, she is not capable of performing her past work. The ALJ then posed a hypothetical question to Dr. Kinard regarding the type of work a person with the claimant's limitations could perform. The

ALJ included the following limitations in his hypothetical: Jobs for the claimant should be those which give her a sit/ stand option; those in which the claimant will only be asked to perform non-complex job tasks and will not have to satisfy production quotas; and jobs in which the claimant will only have brief, infrequent, and casual contact with the general public and co-workers. R. 74. Dr. Kinard testified that such a person could perform sedentary, unskilled work, such as a polisher in the optical goods industry or a bonder in the semi-conductor industry. Dr. Kinard explained that there are more than 600,000 sedentary, unskilled jobs in the national economy and more than 1,400 in the North Central Alabama economy. (R. 74).

*B. ALJ Opinion*

In deciding whether the claimant was "disabled" under 20 C.F.R. 416.920(a), the ALJ applied the five-step evaluation set forth by the Social Security Administration. First, the ALJ determined that the claimant has not engaged in substantial gainful activity since December 18, 2006, the date of SSI application. (R. 11). Additionally, under the second step of the analysis, the ALJ found that the claimant has the following severe impairments: failed back syndrome; panic disorder; anxiety disorder; and borderline personality disorder. (R. 11). In determining whether the previously mentioned impairments were "severe," the ALJ considered all of the claimant's relevant medical history. (R. 11-15).

In applying the first part of the third step of the analysis, the ALJ determined that the claimant did not have an impairment or combination of impairments that meets or medically equals one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. 20 C.F.R. 416.925 and 416.926. (R. 15). Because the ALJ held that the claimant's impairments were not sufficient to meet the definition of a "listing," he applied the second part of the third step of the

analysis: determining the claimant's residual functional capacity (RFC). (R. 16). After considering the claimant's symptoms, the ALJ determined that the claimant

> has the residual functional capacity to lift 20 pounds; sit 6 hours out of an 8-hour day; and stand/walk 6 hours out of an 8-hour day. Her job tasks should be non-complex in nature with no requirements that production quotas have to be met. Her contact with the general public and co-workers should be brief, infrequent, and casual. She would be further restricted by a sit/stand option; no exposure to unprotected heights or the hazards of moving machinery; occasional climbing; and no exposure to extreme cold temperatures.

(R. 16).

In determining the claimant's RFC, the ALJ applied the pain standard to the claimant's subjective complaints of pain and found that, while the claimant's medically determinable impairments could reasonably be expected to cause the alleged symptoms, "the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not credible." (R. 17). The ALJ reasoned that although the claimant testified she could not work because of back pain, the medical evidence shows that since her lumbar surgery in 2002, the claimant has been conservatively treated for back pain. (R. 17). Additionally, the ALJ reasoned that, according to the records, a triggering event always caused the claimant's back pain (i.e. falling down steps or standing on concrete while working at Huddle House). (R. 17). Likewise, the ALJ found that the claimant's anxiety, panic attacks, and depression improve with proper medication, and based on Dr. Randolph's October 2008 report, these ailments only cause the claimant to have "mild restrictions in maintaining daily activities and social functioning and none to moderate restrictions in performing mental work-related activities." (R. 17). The ALJ, therefore, concluded that the claimant's allegations of pain were not credible.

Under the fourth step of the analysis, the ALJ determined that the claimant does not have

the residual functional capacity to perform her past relevant work. (R. 18). The ALJ based his decision on his RFC determination and the testimony of Dr. Kinard, a vocational expert, who testified that the claimant's past relevant work as a nursery production manager was "light in physical demands and a skilled occupation." (R. 73). Dr. Kinard also testified that the skills the claimant acquired from her past work were not transferable to any other job. Considering Dr. Kinard's testimony, the ALJ concluded that the claimant was unable to perform any past relevant work. (R. 19).

Under the fifth and final step of the analysis, the ALJ relied on the testimony of Dr. Kinard to conclude that the claimant, considering her RFC, age, education, and work experience, has the ability to perform other work that exists in significant numbers in the national economy. (R. 19-20). Dr. Kinard testified that the claimant is able to perform such "sedentary, unskilled work" as a polisher in the optical goods industry or a bonder in the semi-conductor industry. (R. 74). Dr. Kindard testified that more than 600,000 similar sedentary, unskilled jobs exist in the national economy, as well as more than 1,400 in the North Central Alabama economy. (R. 74). Therefore, because the claimant could perform other work existing in significant numbers in the national economy, the ALJ refused to find her disabled.

## VI. DISCUSSION

**(1)  The ALJ properly evaluated the mental health evidence of record.**

The claimant argues that the ALJ focused almost exclusively on the claimant's physical conditions and did not adequately consider her mental conditions. However, the court finds substantial evidence that the ALJ adequately considered the mental health issues of record. The ALJ's role is to evaluate all of the relevant medical evidence and resolve any conflicts in the

record. *See* 20 C.F.R. § 416.927, 416.945, 416.946. Additionally, the ALJ has the discretion to resolve any medical evidentiary conflicts as he or she sees fit as long as substantial evidence exists to support his or her conclusion. The duty of this court is neither to re-weigh the evidence nor substitute its own judgment for that of the ALJ. Instead, this court must only review the record and determine whether the decision reached is reasonable and supported by substantial evidence. *Cornelius v. Sullivan*, 963 F.2d 1143, 1145 (11th Cir. 1991).

### A. *Adequate Consideration of the Medical Evidence of Record*

After review of the record, the court finds that substantial evidence shows the ALJ carefully reviewed and considered the claimant's medical history, both physical and mental. (R. 11-15). In doing so, the ALJ noted the medical opinions of Drs. Randolph, Goff, and Born regarding the claimant's mental health. (R. 11-15). The ALJ conceded that the claimant suffered from panic disorder, anxiety disorder, and borderline personality disorder. (R. 11). Additionally, the ALJ included mental limitations in the hypothetical presented to Dr. Kinard, the vocational expert. (R. 74).

In the hypothetical presented to Dr. Kinard, the ALJ specifically stated that the occupation should involve "the completion of only non-complex job tasks" and should not require "the satisfaction of production quotas." (R. 74). Because of the claimant's alleged mental limitations, the ALJ limited her to jobs that are simple in nature and do not require extensive mental or emotional exertion. Similarly, the ALJ limited the claimant to jobs that do not require satisfaction of production quotas. Such quotas could cause stress and increased anxiety, which the claimant may not be capable of handling. Additionally, the ALJ specified that the claimant's potential occupation should be one "in which contact with the general public and

co-worker would be brief, infrequent, and casual." (R. 74). Because the claimant testified that she has had trouble holding jobs in the past because of her inability to deal with people, a position that requires only minimal contact with people would be ideal for the claimant. (R. 56-57). These mental limitations included in the hypothetical suggest that the ALJ did, in fact, consider the claimant's mental limitations in reaching a conclusion not to award disability.

While the ALJ did not include specific medical language of the claimant's mental ailments (i.e. panic attacks, anxiety, depression, etc.) in his hypothetical, he implied such mental limitations. In *Winschel v. Commissioner*, the Eleventh Circuit explained that, in light of other existing evidence on record, the ALJ can implicitly include the claimant's mental limitations in the hypothetical to the vocational expert. *Winschel v. Commissioner of Social Security*, D.C. Docket No. 6:08-cv-01750-DAB (11th Cir. 2011)(explaining that an ALJ must indicate or *implicitly* account for all of the claimant's limitations in the hypothetical question). Additionally, even if the ALJ had not implicitly included the claimant's mental state into the hypothetical, the Eleventh Circuit has held that the failure to mention all mental issues to a vocational expert is not reversible error. *See Jamison v. Bowen,* 814 F. 2d 585, 589 (11th Cir. 1987). Because the ALJ included several areas of mental functioning to describe the claimant's mental capacity and limitations in his hypothetical, the failure to inquire about other mental functional limitations does not render the hypothetical question incomplete. *Id*.

The ALJ based his consideration of the claimant's mental limitations on the following factors, which he specifically set forth in his opinion: (1) the medical evidence, which reflects that the claimant's mental ailments improved and remained stable after she began taking prescribed psychotropic medication in June 2007, with the exception of the brief period in which

she switched medication; and (2) Dr. Randolph's opinion, after examining the claimant, that she did not have a disabling cognitive impairment, had only mild to moderate restrictions in activities of daily living, maintaining social functioning, maintaining concentration, persistence, or pace, and had no episodes of decomposition.  (R.17).  In light of these factors, the ALJ implicitly included the mental limitations of the claimant in the hypothetical to Dr. Kinard.  Thus, because the ALJ considered and explicitly mentioned the previously discussed factors that lead to his conclusion, substantial evidence exists that the ALJ adequately considered the mental health evidence of record.

### B. *Consideration of the claimant's financial situation*

The claimant also argues that the ALJ improperly discredited her mental health claims in not considering her financial inability to pursue more extensive mental treatment.  Pl.'s Br. 7.  After considering the medical evidence of record, the ALJ discredited the claimant's allegations of mental health problems in reasoning that the claimant "did not require psychotherapy, treatment by a mental health specialist, or further hospitalization for debilitating mental problems." (R. 17).  The claimant argues that the only reason she did not obtain such extensive treatment is because she could not afford it. Pl.'s Br. 7.  The Eleventh Circuit considers a claimant's inability to afford prescribed treatment a  "good reason" for noncompliance with medical regiments and regulations.  *See Dawkins v. Bowen*, 848 F.2d 1211, 1213-14 (11th Cir. 1988).  However, an ALJ may find that a claimant is "not disabled" despite the fact that the claimant could not afford his prescribed medical treatment, when such finding is supported by substantial evidence and is "not significantly based on . . . [a claimant's] noncompliance [with prescribed treatment]."  *Ellison v. Barnhart*, 355 F.3d 1272, 1275 (11th Cir. 2003).

In the case at bar, the ALJ did not heavily rely on the noncompliance argument in determining that the claimant was not disabled. The claimant argues that because her general practitioner, Dr. Born, suggested she could benefit from seeing a psychiatrist if she could afford one, the ALJ should have considered her financial situation in deciding whether her ailments warranted a claim for disability (R. 157). However, the ALJ did not heavily rely on noncompliance in determining whether she was disabled; therefore the claimant's inability to afford medical treatment is immaterial. *See Ellison v. Barnhart*, 355 F.3d at 1275 (explaining that, absent heavy reliance by the ALJ on the claimaint's noncompliance, the ALJ's failure to consider the claimant's financial situation is not reversible error). Thus, because the ALJ did not heavily rely on the argument of noncompliance as a factor in refusing to grant the claimant disability, his failure to consider the claimant's financial situation is not reversible error.

C.  <u>Failure to consider contradiction between Dr. Randolph's opinion and GAF score</u>

The claimant argues that the ALJ failed to properly consider the medical evidence of record in relying on Dr. Randolph's opinion that the claimant experienced zero to moderate restrictions in performing mental work-related activities and mild restriction in maintaining activities of daily living and social functioning, which stand in opposition to the claimant's global assessment functioning score (GAF) of 50. The claimant argues that the contradiction between Dr. Randolph's medical opinion and the GAF score he assigned to the claimant exemplifies Dr. Randolph's "questionable" information, impressions and opinion. Pl.'s Br. 6. The court, however, disagrees.

Some circuits have held that a GAF score is neither essential to, nor determinative of, a finding of disability. *See Howard v. Comm'r of Soc. Sec.*, 276 F.3d 235, 241 (6th Cir. 2002)

("While a GAF score may be of considerable help to the ALJ in formulating the RFC, it is not essential to the RFC's accuracy."); *See also Halverson v. Astrue*, 600 F.3d 922, 931 (8th Cir. 2010) (citing *Howard*, 276 F.3d at 241)  Similarly, the Eleventh Circuit acknowledged that the Commissioner can decline to endorse a GAF scale for use in such social security disability cases, because a GAF score has "no direct correlation to the severity requirements of the mental disorder listings."  *Wind v. Barnhart*, 133 F. App'x 684, 692 (11th Cir. 2005) (citing 65 Fed. Reg. 50746, 50764-65 (August 21, 2000)).

Therefore, while the ALJ may consider the claimant's GAF score in determining whether to award disability, the score is not conclusive evidence of such disability.  In light of the claimant's entire medical record, along with the facts and circumstances surrounding her specific case, substantial evidence supports the ALJ's evaluation of the mental health evidence of record.

**(2)    The ALJ's credibility finding was supported by substantial evidence.**

The claimant argues that the ALJ erred in giving heightened credibility to the opinions of Drs. Randolph and Goff, while discrediting the opinion of the claimant's general practitioner/ treating physician, Dr. Born. Pl.'s Br. 4.  Although a treating physician's opinion is generally entitled to considerable weight, the ALJ may accord little weight to the opinion when the evidence shows "good cause" for doing so.  *Johns v. Bowen,* 821 F.2d 551, 555 (11th Cir. 1987) (holding the opinion of a treating physician regarding disability may be discounted by the ALJ if it is unsupported by objective medical evidence or is merely conclusory); *See* 20 C.F.R. § 404.1527 (2000).  Ultimately, the ALJ may reject the opinion of any physician when substantial evidence supports a contrary conclusion.  *See Bloodworth v. Heckler*, 703 F.2d 1233, 1240 (11th Cir. 1983); *see also Oldham v. Schweiker*, 660 F.2d 1078, 1084 (5th Cir. 1981) ("The law is clear

that, although the opinion of an examining physician is generally entitled to more weight than the opinion of a non-examining physician, the ALJ is free to reject the opinion of any physician when the evidence supports a contrary conclusion."); 20 C.F.R.§ 404.1526 (1980) ("The weight to be given such physician's statement depends on the extent to which it is supported by specific and complete clinical findings and is consistent with other evidence as to the severity and probable duration of the individual's impairment or impairments.").

Here, the ALJ provided substantial evidence of "good cause" for discrediting Dr. Born's opinions by citing and relying on the expert medical opinions of both Drs. Randolph and Goff. (R. 18). Dr. Randolph, a consultative medical specialist in the field of psychiatry, reported that the claimant had "none" to "moderate" limitations in mental work-related activities. (R. 434-35). Additionally, upon personal examination of the claimant, Dr. Randolph concluded that he did not see any cognitive impairment that warranted an award of disability. (R. 438). Dr. Randolph also concluded that the claimant showed no substantiating evidence of bipolar disorder, as Dr. Born, the claimant's treating physician and general practicioner, had previously opined. (R. 48). Similarly, Dr. Goff, the reviewing medical expert in psychology, reviewed the entire medical record and concluded that the claimant did not meet a listing for a psychiatric disturbance. (R. 72).

The ALJ satisfied the "good cause" standard defined in *Phillips v. Barnhart*. *See Phillips*, 357 F.3d at 1240. Because Dr. Born, a general practitioner, gave testimony and drew conclusions regarding a specific area of practice in which he is not specialized, and because his testimony and conclusions differed from those of two medical experts specialized in the field of psychology (Drs. Randolph and Goff), substantial evidence exists to prove that (1) the medical

evidence of record does not bolster the treating physician's opinions and (2) the evidence supports conclusions contrary to those of the treating physician. *See Id.* The ALJ provided reasons for his credibility distribution in stating that "[Dr. Born's] main concern seems to have been psychiatric; yet *specialists* have evaluated the claimant and reviewed the record at the hearing" and thus their conclusions warrant more weight than those of Dr. Born (R. 18) (emphasis added). Therefore, substantial evidence exists to support the ALJ's credibility distribution among the doctors.

### (3) The ALJ properly found that the claimant does not meet Listing 12.04.

To establish presumptive disability under a listing, "a claimant must have a diagnosis included in the Listings and must provide medical reports documenting that the conditions meet the specific criteria of the Listings and the duration requirement." *Wilson v. Barnhart*, 284 F.3d 1219, 1224 (11th Cir. 2002). A mere diagnosis of a listed impairment is not enough to establish that a listing has been met. The record must contain corroborative medical evidence supported by clinical and laboratory findings. 20 C.F.R. §§ 404.1525, 416.925, 404.1526, 416.926; *see Carnes v. Sullivan*, 936 F.2d 1215, 1218 (11th Cir. 1991); *see also Bell v. Brown,* 796 F.2d 1350, 1353 (11th Cir. 1986). Additionally, the burden rests on the claimant to prove that her impairments meet a listed impairment. *See Barron v. Sullivan*, 924 F.2d 227, 229 (11th Cir. 1991). To prove that her impairment matches a listing, the claimant must show that the impairment meets all of the specified medical criteria. *Sullivan v. Zebley*, 493 U.S. 521, 530 (1990) ("An impairment that manifests only some of those criteria, no matter how severely, does not qualify.").

The claimant argues that she met the A and B criteria for Listing 12.04 based on the

17

report of Dr. Farrukh Jamil, a staff psychiatrist at Gadsden Regional Medical Center. (R. 175).

However, all of the information listed in Dr. Jamil's report is based on the claimant's own

*subjective* statements to the doctor.  In his June 2007 report, Dr. Jamil recorded:

> [Patient] *reports* of a recent increase in anxiety and frequent panic attacks.  Patient also *reported* her depression had gotten significantly worse over the past 4-5 months with frequent crying spells, unable to sleep at night, decreased energy, increased fatigue, and poor concentration.  Patient also *reported* frequent mood swings and felt that her mind frequently raced and she was unable to maintain focus on what she was doing.  Patient additionally *reported* feeling very irritable and going into rages at home.

(R. 175) (emphasis added).  Dr. Jamil ultimately concluded in this same report that he saw "no

evidence of overt psychotic symptomatology" in the claimant. (R. 175).  Because the entirety of

the claimant's listing argument hinges on the above *subjective* statements made by the claimant

and recorded by Dr. Jamil, this court reject's claimants assertion that the ALJ erred in not finding

that the claimant meets Listing 12.04(A).  This court sees no need to address 12.04(B) because

both sections (A) and (B) of 12.04 must be met for the claimant to satisfy the listing.  Therefore,

substantial evidence exists to support the ALJ's determination that the claimant's ailments do not

meet the requirements of a listing.

### (4) The ALJ's hypothetical question was adequate.

Because the issue regarding inclusion of mental limitations in the ALJ's hypothetical

situation was discussed and resolved above, the court will provide only a brief recap here.  In the

hypothetical, the ALJ specifically stated that the occupation determined by Dr. Kinard should

involve "the completion of only non-complex job tasks" and should not require "the satisfaction

of production quotas." (R. 74).  Additionally, the ALJ specified that the claimant's potential

occupation should be one "in which contact with the general public and co-workers would be

brief, infrequent, and casual." (R. 74). Under the recent Eleventh Circuit opinion in *Winschel*, the ALJ need not explicitly list the claimant's known mental limitations, but rather can imply such limitations in the hypothetical question posed to the vocational expert. *Winschel v. Commission of Social Security*, 2011 U.S. App. LEXIS 1396, at *10 (11th Cir. Jan. 24, 2011) (invalidating the ALJ's conclusion that the claimant could perform significant numbers of jobs in the national economy because the ALJ "failed to include or otherwise implicitly account for all of [claimant's] impairment."). Therefore, because the ALJ in the present case implicitly included the claimant's mental limitations, the ALJ did not err in his presentation of the hypothetical situation to Dr. Kinard.

## VII. CONCLUSION

The court concludes that the ALJ's determination that the claimant is not disabled but is limited to non-complex work requiring only brief, infrequent, and casual contact with the general public and co-workers is supported by substantial evidence, and that he applied proper legal standards in reaching this determination. The ALJ acted properly in rejecting the claimant's disability claim. The Commissioner's final decision is, therefore, due to be **AFFIRMED**, and a separate order in accordance with the memorandum of decision will be entered.

DONE and ORDERED this 22nd day of February 2011.

_____
KARON OWEN BOWDRE
UNITED STATES DISTRICT JUDGE